IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MINERVA CARRERO-OJEDA,

**Plaintiff**,

v.

CIVIL NO. 11-2072 (FAB)

AUTORIDAD DE ENERGIA ELECTRICA, VICTOR RUIZ PEREZ, MIGUEL CORDERO, JOHN DOES,

**Defendant.**

**OPINION AND ORDER**[1]

BESOSA, District Judge

Plaintiff Minerva Carrero-Ojeda brings this action against her former employer, Autoridad de Energia Electrica (Puerto Rico Electric Power Authority) ("PREPA"), and against Victor Ruiz-Perez ("Ruiz"), Miguel Cordero ("Cordero"), and unnamed persons (collectively, "defendants"), pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"); the Puerto Rico Whistle Blower Act as provided by Law 115, 29 L.P.R.A. § 194 ("Law 115"); and Law 426, 1 L.P.R.A. § 601 ("Law 426").  Plaintiff invokes subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, and seeks supplemental jurisdiction for her Commonwealth claims pursuant to 28 U.S.C. § 1367.

---

[1] Jared Killeen, a second-year student at Brooklyn Law School, assisted in the preparation of this Opinion and Order.

Civil No. 11-2072 (FAB)                                                                    2

Pending before the Court is defendants' motion to dismiss. (Docket No. 18.)  For the reasons set forth below, defendants' motion is **GRANTED.**

**I.  Background**

Plaintiff was a managerial employee of PREPA.  Until the time of her discharge on October 31, 2010, she held the position of administrative coordinator in the PREPA Aguadilla Technical Office, where she reported directly to her supervisor, defendant Ruiz. (Docket No. 1 at ¶¶ 8 & 10.)  Both plaintiff and defendant Ruiz held inferior positions to defendant Cordero, who acted as executive director of PREPA.  Id. at ¶ 36.  Plaintiff alleges that from November 2007 until October 2010, defendants Ruiz and Cordero, in concert with many other PREPA employees, undertook elaborate means to harass, threaten, unjustly discipline, and ultimately discharge plaintiff from her position at PREPA.  Id. at ¶ 9.  In a complaint filed on October 31, 2011, plaintiff offers the following account of her misfortunes.

Plaintiff alleges, essentially, that she was discharged from PREPA in retaliation for her good moral fortitude.  In August 2007, PREPA's Internal Affairs Office commenced an administrative investigation of the Aguadilla Technical Office on grounds of employee corruption.  Id. at ¶ 10.  Among the PREPA personnel targeted by the investigation was defendant Ruiz.  Id.  Despite the

Civil No. 11-2072 (FAB)                                                  3

obvious potential for fallout, plaintiff cooperated in the investigation by offering information and testimony.  Id.  It was after plaintiff testified before investigators that defendants Ruiz and Cordero allegedly "commenced a pattern of discriminatory acts against [p]laintiff[,] affecting the terms, conditions, benefits and privileges of her employment."[2]  Id. at ¶ 11.

Plaintiff points to many examples of harassment perpetrated by a vast web of PREPA employees.  For instance, plaintiff alleges that, on March 14, 2008, the PREPA Labor Affairs Office refused to grant her travel allowance for a trip from Aguadilla to San Juan.  Id. at ¶ 14.  Plaintiff denies having encountered this problem before, and proposes that the Labor Affairs Office acted in league with the defendants.  Id.  In response to the allowance refusal, plaintiff "filed an administrative revision before the Court of Appeals," which ordered a "hearing to solve the controversy."  Id.  Nevertheless, PREPA did not comply "with the judgment entered by the Court of Appeals."[3]  Id.

---

[2] Plaintiff alleges that once the Internal Affairs Office concluded its investigation and filed a recommendation for the discharge of several PREPA employees, the harassment and threats had become so severe that plaintiff "feared for her life."  (Docket No. 1 at ¶ 34.)

[3] Presumably plaintiff is referring to an administrative court, though she does not specify which one in her complaint.

Civil No. 11-2072 (FAB)                                                 4

On April 3, 2008, the Internal Affairs Office summoned plaintiff to give a testimonial statement regarding the prenominate corruption investigation.  Id. at ¶ 15.  Plaintiff alleges that on May 14, 2008, defendant Ruiz instructed a PREPA security guard to withhold from plaintiff a particular report that she intended to offer the Internal Affairs Office as part of her testimony.  Id. at ¶ 16.  Plaintiff does not clarify whether or not she ever received the report, and if she did, by what means.

In June 2008, plaintiff's mother fell and injured herself in her home.  Id. at ¶ 17.  The severity of the injury required plaintiff to take leave from work and attend to her mother. Plaintiff provided a medical certificate to PREPA and requested two months leave under the FMLA.  Id.  During plaintiff's leave, defendant Ruiz, now acting in concert with Maria de Lourdes Roman ("Roman") and Jose Garcia-Fabian ("Garcia"),[4] filed an administrative investigation against plaintiff.  Id. at ¶ 18. Plaintiff alleges that defendant Ruiz's investigation was contrary to "the provisions of [PREPA]'s Procedure for the Use of Family and Medical Leave . . .", the FMLA, and Law 115.  Id.  In response to defendant Ruiz's investigation, plaintiff filed a complaint with

---

[4] Plaintiff's complaint provides no information about Roman or Garcia, their positions at PREPA, their relationships to plaintiff, or the possible source of their animus toward her.

Civil No. 11-2072 (FAB)                                                 5

the Equal Employment Opportunity Commission ("EEOC"), though a resolution was never issued.

Plaintiff also alleges that during her FMLA leave, Chief of Human Resources Alex Carvajal ("Carvajal"), Garcia, and Abraham Sanchez ("Sanchez")[5] interviewed and promoted three PREPA employees to superior positions in the Aguadilla Technical Office.  Id. at ¶ 20.  Plaintiff alleges that Carvajal, Garcia, and Sanchez conspired to deprive plaintiff of an opportunity for promotion in violation of the FMLA, "inasmuch [as the promotions] affected [p]laintiff's right to a promotion [] protected by [law]."  Id. Plaintiff filed two complaints against Garcia and Sanchez, in addition to submitting a grievance to the Labor Affairs Office. Id. at ¶ 21.  Again, no resolution was issued.  Id.

On September 29, 2008, defendant Ruiz asked plaintiff to prepare absence letters for those employees who "demonstrated more than 6% absence in their work."  Id. at ¶ 24.  Furthermore, in October 2008, defendant Ruiz assigned plaintiff the task of making photocopies of the personnel file of every employee in the Aguadilla Technical Office.  Id. at ¶ 23.  Plaintiff contends that both tasks were beneath her status as a manager, and better suited to "clerical personnel."  Id. at ¶ 24.  Plaintiff also alleges that

---

[5] Again, plaintiff's complaint provides no information concerning Sanchez or his role at PREPA.

Civil No. 11-2072 (FAB)                                              6

the appointment of these tasks constituted "employment harassment," violating certain PREPA codes and procedures.  Id. at ¶ 23.  In response to this perceived harassment, plaintiff filed a "UTIER grievance"[6] against defendant Ruiz, though again no resolution was issued.  Id. at ¶ 24.

Plaintiff alleges that on May 6, 2009, defendant Ruiz, in conspiracy with unnamed personnel in the Labor Affairs Office, deducted "6 hours and 16 minutes from her payroll and made her use it as vacation leave."  Id. at ¶ 27.  The plan was allegedly hatched while plaintiff attended an EEOC meeting concerning her FMLA grievance against Garcia and Sanchez.  Id.  When plaintiff returned, she filed a complaint seeking redress; later, Director of Transmission and Distribution Jose Colon ("Colon") ordered that plaintiff be reimbursed for the discounted hours.  Id.

In September 2009, plaintiff submitted to the PREPA Accounting Office her travel expenses for the month of August, totaling $201.00.  Id. at ¶ 29.  Typically, the Accounting Office promptly reimbursed plaintiff for her work-related expenses; plaintiff alleges, however, that following the instructions of PREPA counsel Francisco Santiago ("Santiago"), the Accounting Office denied payment.  Id.

---

[6] Plaintiff does little to explain the nature of a "UTIER grievance." (Docket No. 1 at ¶ 24.)

By far the fiercest alleged retaliatory attack against plaintiff concerns PREPA's coordinated incrimination and discharge of plaintiff on charges that she violated the company's Rules of Conduct.  Plaintiff alleges that in November 2007, defendant Ruiz initiated an administrative investigation of plaintiff pursuant to suspicions that she had made photocopies of her personnel file without defendant Ruiz's consent.  Id. at ¶ 12.  On January 30, 2008, Carvajal, chief of PREPA's Human Resources Office, filed official charges against plaintiff, alleging that she violated "conduct rules 18, 29 and notes 1 and 5 of the Personnel Regulation."  Id. at ¶ 13.  On August 28, 2008, Carvajal filed additional charges against plaintiff pursuant to rules "17 and 27." Id. at ¶ 22.  The following day, PREPA set the date for a hearing regarding the charges against plaintiff.  Id. at ¶ 25.  On January 23, 2009, a hearing officer issued a resolution recommending plaintiff's discharge.  Id.  Plaintiff alleges that on February 19, 2009, Karen Loyola ("Loyola"), apparently acting on behalf of defendant Ruiz, "intended to force [p]laintiff to receive [a] copy of [the] [r]esoultion entered" against her, which plaintiff perceived as an "act of intimidation."  Id. at ¶ 26.  On June 29, 2009, defendant Cordero ordered that a second administrative hearing be conducted before a new hearing officer. Id. at ¶ 28.  On June 10, 2010, the new hearing officer issued a

Civil No. 11-2072 (FAB)                                                  8

second resolution again recommending that plaintiff be discharged. Id. at ¶ 30.

     Not long afterward, plaintiff requested two leaves of absence under the FMLA.  First, she applied for leave on August 19, 2010, in order to attend to her ailing mother.  Id. at ¶ 32.  On September 2, 2010, defendant Ruiz approved plaintiff's request for leave, which was to be charged to plaintiff's vacation days.  Id. at ¶ 33.  Then, on October 22, 2010, plaintiff requested three months of FMLA leave, again in order to care for her mother, who had fallen from her bed and injured her hip.  Id. at ¶ 35. Plaintiff submitted a request letter and a medical certificate, along with instructions that her payroll reflect the nature of her absence.  Id.  Plaintiff alleges, however, that by "the middle of October, 2010," her attorney received a letter from PREPA, signed by defendant Cordero, stating that plaintiff had been discharged from her position at PREPA.[7]  Id. at ¶ 36.  On October 27, 2010, plaintiff's counsel received a second letter, signed by Angel L. Rivera ("Rivera"),[8] reiterating that plaintiff had been discharged,

---

     [7] Plaintiff does not explain why she requested three months of leave on October 22, 2010, after learning in "mid October" that she had been discharged from her position.  Nor is it clear whether PREPA granted this request for leave, given the fact that it had, by all accounts, already decided to discharge plaintiff.

     [8] Plaintiff gives no account of Rivera's position at PREPA.

Civil No. 11-2072 (FAB)                                                  9

effective October 31, 2010.  Id. at ¶ 37.  Plaintiff alleges that she was not personally notified of her discharge until July 15, 2011, when she received a letter to that effect from Johanna Costas-Vazquez ("Costas").  Id.  Finally, on November 4, 2010, plaintiff's counsel received a letter from Attorney Santiago stating that PREPA would not acknowledge plaintiff's request for FMLA leave filed on October 22, 2010.  Id. at ¶ 38.

On October 31, 2011, plaintiff filed a complaint against defendants alleging (1) a violation of her rights pursuant to the FMLA, and (2) harassment and retaliatory discrimination pursuant to Law 115 and Law 426.  Id. at pp. 10-13.  With regard to the FMLA claim, on which her entitlement to federal jurisdiction rests, plaintiff alleges that in October 2010 she qualified for leave under the FMLA, that she gave adequate notice to PREPA, but that upon taking leave, she was "illegally discharged from her position at [PREPA] during the period she was protected by the FMLA."  Id. at p. 11.  Plaintiff argues that her discharge constitutes a violation of her rights as protected by the FMLA.

On January 18, 2012, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), arguing that plaintiff fails to state a claim on which relief can be granted.  (Docket No. 18.)  Defendants allege that plaintiff was discharged for disciplinary reasons entirely

Civil No. 11-2072 (FAB)                                              10

unrelated to her FMLA leave and, moreover, that the FMLA does not insulate an employee from adverse employment actions unrelated to rights protected by the FMLA.  Id. at pp. 12-13.  In support of this claim, defendants allege that on January 30, 2008, PREPA filed a disciplinary complaint against plaintiff.  (Docket Nos. 1 at ¶ 13; 18-1 at p. 2.)  The complaint included charges of insubordination, concealment of facts, and assertion of false statements.  (Docket No. 18-1 at p. 2.)  PREPA conducted two hearings, and issued three resolutions concerning plaintiff's misconduct.  Id. at pp. 2-4.  On October 14, 2010, defendant Cordero issued a decision ordering plaintiff's discharge.  Id. at p. 4.  Defendants submit for consideration a variety of extrinsic evidence, including defendant Cordero's decision, a copy of the administrative charges filed against plaintiff on January 30, 2008, and an administrative *nunc pro tunc* ruling by Hearing Officer Berta Mainardi-Peralta.  (See Docket Nos. 18-2 and 18-3.)

Plaintiff opposed the motion to dismiss on February 10, 2012 (Docket No. 28), insisting that defendants interfered with her FMLA rights by "implementing her discharge during the effectiveness of [her] leave, rather than on another date . . . ."  Id. at p. 5.  On February 19, 2012, defendants filed a response to plaintiff's opposition, refuting the proposition that an employee is immune

from independent adverse employment action while on FMLA leave. (Docket No. 35.)

## II. Legal Standard Pursuant to Rule 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint when it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When considering a motion pursuant to Rule 12(b)(6), a court must accept the "well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his [or her] favor." Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). When faced with a motion to dismiss, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Id. at 12 (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009)). Any "[n]on-conclusory factual allegations in the complaint [, however,] must . . . be treated as true, even if seemingly incredible." Id. (citing Iqbal, 129 S.Ct. at 1951). Where those factual allegations "'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Id. (quoting Iqbal, 129 S.Ct. at 1949). Furthermore, a court may not

Civil No. 11-2072 (FAB)                                                    12

"attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely'."  Id. at 13 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  The relevant inquiry, therefore, "focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."  Id.

According to Rule 12(b)(6), a court must base its determination solely on the material submitted as part of the complaint or central to it.  Fudge v. Penthouse Int'l. Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988).  Generally, "a court may not consider documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  "When . . . a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), [however,] that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."  Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (internal citation omitted).  Thus, the Court may consider "documents referred to in the complaint but not annexed to it."  Rodi v. S. New Eng. Sch. of

Civil No. 11-2072 (FAB)                                                    13

Law, 389 F.3d 5, 12 (1st Cir. 2004). In this case, plaintiff makes explicit reference to extrinsic evidence supplied by defendant, including a disciplinary complaint filed against plaintiff on January 30, 2008, and a *nunc pro tunc* ruling by Hearing Officer Mainardi recommending her discharge. (Docket Nos. 18-2 and 18-3.) Therefore, the Court will consider these documents in conjunction with the complaint.

**III. Discussion**

    **A.    The FMLA Claim**

Defendants request dismissal of plaintiff's FMLA claim because, they argue, plaintiff's theory that she cannot be discharged while on FMLA leave is flawed. (Docket No. 18-1 at p. 15.) Plaintiff, on the other hand, contends that her discharge was ordered in direct contravention to the entitlements set forth by the FMLA. (Docket No. 28 at ¶ 20.) The Court first determines which causes of action plaintiff brings forth.

The FMLA divides causes of action into two distinct groups: interference claims and retaliation claims. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159-160 (1st Cir. 1998); Kenney v. Bethany of R.I., No. 09-cv-289-ML, 2011 U.S. Dist. LEXIS 49620, at. *2 (D.R.I. May 9, 2011). Plaintiff argues that defendants interfered with her FMLA rights by discharging her from her position at PREPA while she was on leave to attend to her ailing

Civil No. 11-2072 (FAB) 14

mother. (Docket No. 1 at ¶ 50.) Moreover, plaintiff reasons that defendants' decision to discharge her during her FMLA leave "has no other justification than to discriminatory [sic] retaliate against her to deprive her of her right as part of the pattern of harassment and retaliation." Id. at ¶ 51. Therefore, plaintiff appears to allege both a substantive denial of FMLA benefits as well as discriminatory retaliation in reaction – or, perhaps, contravention – to the exercise of those benefits. On both counts, the Court finds plaintiff's argument to be unavailing.

### i. FMLA Interference Claim

Plaintiff alleges that defendants interfered with her protected rights by discharging her during her FMLA leave. (Docket No. 28 at ¶ 16.) It is well known that the FMLA establishes substantive rights for employees. Colburn v. Parker Hannifin Corp., 429 F.3d 325, 330 (1st Cir. 2005). These rights, codified at 29 U.S.C. § 2612, guarantee eligible employees "a total of 12 workweeks of leave during any 12-month period," which may be taken intermittently in order to care for a relative with a "serious health condition." 29 U.S.C. § 2612(a)(1)(C). Upon concluding a period of leave under the FMLA, an employee is entitled to return to the same position, with equivalent pay, benefits, and working conditions, and without loss of accrued seniority. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159-160

(1st Cir. 1998).  Employee rights pursuant to the FMLA are essentially prescriptive, "set[ting] substantive floors" for conduct by employers, and creating "entitlements" for employees. Id. at p. 159 (quoting Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711, 712-13 (7th Cir. 1991)).  Therefore, in an FMLA interference claim, the issue is simply whether the employer provided its employee the entitlement set forth in the FMLA.  Id.

The Court finds that defendants provided plaintiff with all required entitlements.  On at least two separate occasions before her discharge, plaintiff requested FMLA leave, and on both occasions her request was granted.  Plaintiff claims that it was while on a third leave of absence that she was discharged.[9] (Docket No. 1 at ¶¶ 17, 32 and 35.)  Because plaintiff was never deprived of her right to FMLA leave itself, however, the only issue is whether plaintiff has a claim premised on her right to return to work after her leave was ostensibly completed.  Kenney, 2011 U.S. Dist. LEXIS 49620 at *2.  The Court can find no entitlement in the

---

[9] In contravention to the basic principles of logic, plaintiff claims to have requested FMLA leave for a third time on October 21, 2010, well *after* being discharged from her position in "the middle of October." (Docket No. 1 at ¶¶ 35-36.)  It should go without saying that if plaintiff requested leave after being fired, the status of her FMLA rights is moot.  Nonetheless, because the Court extends plaintiff every reasonable inference in her favor, we will assume that plaintiff was in fact on leave when she was discharged in October 2010. Medina-Claudio, 292 F.3d at 34.

Civil No. 11-2072 (FAB)                                               16

FMLA, however, that grants reinstatement once an employee has been discharged for reasons unrelated to her leave. Rather, The Code of Federal Regulations provides that "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a). This means that "[i]f an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off . . . . " 29 C.F.R. § 825.216(a)(1).

The First Circuit Court of Appeals has interpreted the preceding statutory language to mean that "[w]here an employee properly takes FMLA leave, the employee cannot be discharged for exercising a right provided by the statute, but can still be discharged for independent reasons." Nagle v. Acton-Boxborough Reg'l. School Dist., 576 F.3d 1, 3 (1st Cir. 2009). Given the evidence supplied by both parties, including a disciplinary complaint filed against plaintiff and a *nunc pro tunc* ruling recommending her discharge, the Court accepts defendants' contention that plaintiff was discharged for reasons entirely independent of her FMLA leave. It is undisputed that on January 30, 2008, PREPA filed a disciplinary complaint against

plaintiff.  (Docket Nos. 1 at ¶ 13; 18-1 at p. 2.)  The complaint included serious charges of insubordination, concealment of facts, and assertion of false statements.  (Docket No. 18-1 at p. 2.)  PREPA conducted two hearings, and issued three resolutions, concerning plaintiff's misconduct.  Id. at pp. 2-4.  On October 14, 2010, after prolonged consideration, defendant Cordero issued a decision ordering plaintiff's discharge.  Id. at p. 4.  Plaintiff supplies the Court no reason to doubt the legitimacy of this decision.

In sum, the FMLA contains no entitlement that grants reinstatement once an employee has been discharged for reasons unrelated to her leave.  Because plaintiff was discharged for reasons entirely independent of the FMLA, she has no substantive interference claim against defendants.

  **ii.  FMLA Retaliation Claim**

The Court reviews plaintiff's retaliation claim separately, because "the failure of a substantive [interference] claim . . . does not foreclose a retaliation claim."  Colburn, 429 F.3d at 333.  Indeed, a plaintiff "may pursue a retaliation claim even if there is no claim of violation of substantive rights to leave."  Id.  In some cases, a successful retaliation claim might lead to independent damages.  Id. at 334.

Civil No. 11-2072 (FAB)                                         18

"[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."  29 C.F.R. § 825.220(c); see also Hodgens, 144 F.3d at 160.  While an employer may terminate an employee on FMLA leave for lawful and independent reasons, "retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights."  Edgar v. JAC Products, Inc., 443 F.3d 501, 508 (7th Cir. 2006).  Plaintiff asserts a sort of hybrid FMLA retaliation claim.  Instead of claiming that she was discharged for exercising her FMLA rights, she argues that she was discharged in retaliation for testifying against defendant Ruiz.  Moreover, she attributes her misfortune to an intricate conspiracy perpetrated not only by her supervisors, defendants Ruiz and Cordero, but many other PREPA employees, the PREPA legal counsel, and the Human Resources, Labor Affairs and Accounting offices.  Plaintiff's failure to state a proper cause of action within the scope of FMLA jurisprudence gives the Court ample reason to deny her claim. Dep't. of Recreation & Sports of Puerto Rico v. World Boxing Ass'n., 942 F.2d 84, 89 (1st Cir. 1991) ("there is no duty on the part of the trial court . . . to create a claim which [plaintiff] has not spelled out in his pleading") (quoting Clark v. Nat'l. Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).  Nonetheless, the Court extends

Civil No. 11-2072 (FAB)                                              19

the plaintiff every reasonable inference in her favor, and entertains her claim despite its peculiar scope and high level of abstraction.  <u>Medina-Claudio</u>, 292 F.3d at 34.

To establish a *prima facie* claim of FMLA retaliation, an employee must show that (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.  <u>Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.</u>, 447 F.3d 105, 113-14 (1st Cir. 2006).  The Court considers the facts of this case in relation to the standard set forth in <u>Orta-Castro</u>.  Even if the Court assumes, pursuant to the first two prongs, that plaintiff availed herself of FMLA leave in June 2008, August 2010, and October 2010, and that she was discharged by PREPA sometime after October 15, 2010, plaintiff still fails to demonstrate a causal connection between her FMLA leave and her discharge pursuant to the third prong of the test.  Simply put, plaintiff offers no evidence that PREPA took into account her FMLA leave when recommending her discharge.  To the contrary, it is obvious that Hearing Officer Mainardi, in the *nunc pro tunc* resolution, considered only those charges brought against plaintiff in the disciplinary complaint.  (Docket No. 18-3.)  Plaintiff's allegations of conspiracy do little to overwhelm defendants' sensible assertion that plaintiff was

fired for disciplinary issues completely independent of her FMLA leave. For these reasons, the Court **GRANTS** defendants' motion to dismiss plaintiff's FMLA claim.

### B. Law 115 and Law 426 Claims

Because the Court dismisses plaintiff's FMLA claim, there is no federal claim on which to anchor supplemental jurisdiction for her attendant state claims. 28 U.S.C. § 1367. Therefore, the Court **GRANTS** defendants' motion to dismiss plaintiff's Law 115 and Law 426 claims.

## IV. Conclusion

For the reasons expressed, the Court **GRANTS** defendant's motion to dismiss. (Docket No. 18.) Plaintiff's federal FMLA claims are **DISMISSED WITH PREJUDICE**. Because there is no reason why plaintiff cannot pursue her Law 115 and Law 426 claims against defendants in local court, plaintiff's Law 115 and Law 426 claims are **DISMISSED WITHOUT PREJUDICE**.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 27, 2012.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE